```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
                                   :
NICOLE MALLOY
                                   :
    v.                             :   Civil Action No. DKC 22-2224
                                   :
MAYOR AND TOWN COUNCIL OF TOWN
OF EDMONSTON, MARYLAND             :
```

**MEMORANDUM OPINION**

Defendant Mayor and Town Council of the Town of Edmonston, Maryland have moved to dismiss Plaintiff Nicole Malloy's complaint alleging disability-based employment discrimination arising from her termination as a code enforcement officer. (ECF No. 4). The issues have been briefed, and the court now rules, no hearing being necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

**I.   Background**

In 2017, Plaintiff Nicole Malloy began working as a code enforcement officer for the Town of Edmonston, Maryland ("The Town"). (ECF No. 1, at 2).[1] Her starting salary was $40,000.00. (ECF No. 1, at 2). In August 2019, Plaintiff was diagnosed with a cancerous tumor between her lungs. (ECF No. 1, at 2). She also

---

[1] Unless otherwise noted, the facts outlined here are in the Complaint. The facts are construed in the light most favorable to Plaintiff.

suffers from diabetes, high blood pressure, and heart disease. (ECF No. 1, at 2).

On March 13, 2020, the code enforcement office at which Plaintiff worked temporarily paused operations because of the COVID-19 pandemic.  (ECF No. 1, at 2).  Because of Plaintiff's myriad health conditions, COVID-19 posed a serious risk to her life—according to the Complaint, Plaintiff's conditions were "high risk factors for severe[] disease or possible death from COVID-19."  (ECF No. 1, at 2).  On March 31, 2020, an Edmonston Police Captain sent an email instructing Plaintiff to return to work two days per week.  (ECF No. 1, at 2).  Plaintiff responded that she could not return to the office because of her health conditions and explained that she could only work remotely.  (ECF No. 1, at 2).  In response, the Chief of Police told Plaintiff that "[a]nytime an order is issued from a supervisor or department head in town, it should be followed [without] question."  (ECF No. 1, at 2).

On April 20, 2020, the Town put Plaintiff in a "no duty" working status, which forced her to use her vacation time to avoid coming into the office.  (ECF No. 1, at 3).  About one week later, Plaintiff provided the Town with a letter from her doctor.  (ECF No. 1, at 3).  In that letter, the doctor explained that Plaintiff was "classified as high risk for COVID-19," and thus the doctor had advised Plaintiff "to self-quarantine and work from home."

(ECF No. 1, at 3). On May 7, 2020, the Town told Plaintiff that she was under "investigation." (ECF No. 1, at 3). The Complaint alleges that this investigation was "ostensibly in retaliation for Plaintiff seeking an accommodation." (ECF No. 1, at 3). On July 13, 2020, the Town informed Plaintiff that her office had resumed full-time operations and instructed Plaintiff to provide documentation from a medical provider certifying that she could return to work. (ECF No. 1, at 3). At the time, Plaintiff had still not been cleared by her doctor to work in-person. (ECF No. 1, at 3). Three days later, on July 16, 2020, she was fired. (ECF No. 1, at 3).

Plaintiff later filed a Charge of Discrimination with the Prince George's County Human Rights Commission. (ECF No. 1, at 4). That Charge was cross filed with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 1, at 4). On June 7, 2022, the EEOC issued a right-to-sue notice. (ECF No. 1, at 4). The Complaint also alleges that in March 2022, Plaintiff applied for another job and that the Town provided a negative reference. (ECF No. 1, at 4). Plaintiff alleges that because of this negative reference, she "was delayed in being deployed with [that employer] and lost income as a result of the delay." (ECF No. 1, at 4).

In September 2022, Plaintiff sued the Mayor and Town Council of the Town of Edmonston. (ECF No. 1, at 1). The Complaint raises three claims, each premised on the allegation that Defendant

"discharg[ed] Plaintiff from employment because of her disability." (ECF No. 1, at 4-6). Count I asserts that the discharge violated an anti-discrimination provision of the Prince George's County Code. *See* Prince George's County, Md., Code § 2-222. (ECF No. 1, at 4-5). Count II asserts that the discharge violated the Maryland Fair Employment Practices Act ("MFEPA"). *See* Md. Code, State Gov't § 20-601, *et seq*. (ECF No. 1, at 5). Finally, Count III asserts that the discharge violated the Americans with Disabilities Act ("ADA"). *See* 42 U.S.C 12101, *et seq*. (ECF No. 1, at 6). While the Complaint suggests that Defendant engaged in a retaliatory investigation of Plaintiff and provided a retaliatory negative reference, these allegations are mentioned only in the background section, and none of the three claims appear to involve retaliation. Defendant moved to dismiss the Complaint under Fed.R.Civ.P. 12(b)(6), (ECF No. 4), Plaintiff filed a Response, (ECF No. 5), and Defendant filed a Reply, (ECF No. 6).

## II. Standards of Review

When deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must accept as true a complaint's well-pleaded allegations, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). A court need not, however, accept

4

legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), or conclusory factual allegations devoid of any reference to actual events, *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

**III. Analysis**

Defendant argues: (1) that the MFEPA and county code claims in Counts I and II should be dismissed because they are barred by the statute of limitations, and (2) that the ADA claim in Count III should be dismissed because the Complaint does not allege sufficient facts to state a plausible ADA claim.

**A.   Counts I and II: State and County Law Claims**

Defendant argues that the statute of limitations bars Plaintiff's state and county law claims in Counts I and II. A two-year limitations period applies to both claims.[2] A motion to dismiss pursuant to 12(b)(6) does not generally permit an analysis of potential defenses a defendant may have to the asserted claims. However, dismissal may be appropriate when a meritorious affirmative defense is clear from the face of the complaint. *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*,

---

[2] *See* Md. Code, State Gov't § 20-1013 (a)(3) (two-year limitations period for MFEPA claims that do not allege harassment); Md. Code, State Gov't § 20-1202(c)(1) (when a person is "subjected to a discriminatory act prohibited by the county code" for Prince George's County, he or she must sue "within 2 years after the occurrence of the alleged discriminatory act").

5

250 (4th Cir. 1993)). "The statute of limitations is an affirmative defense that should only be employed to dismiss claims pursuant to Rule 12(b)(6) when it is clear from the face of the complaint that the claims are time barred." *Long v. Welch & Rushe, Inc.*, 28 F.Supp.3d 446, 456 (D.Md. 2014) (citations omitted). The burden is on the party asserting the defense to plead and prove it. *See Newell v. Richards*, 323 Md. 717, 725 (1991) ("As a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing suit.").

Plaintiff does not dispute that a two-year limitations period applies. Plaintiff's complaint makes clear that she was fired on July 16, 2020. (ECF No. 1, at 3). She filed this suit more than two years later—on September 5, 2022. (ECF No. 1, at 7). To avoid the bar, she asks the court to toll the limitations period under the equitable tolling doctrine. (ECF No. 5, at 4). She argues that equitable tolling applies because the right-to-sue notice she received from the EEOC purportedly contained "confusing" language that misled her about the limitations period. (ECF No. 5, at 4).[3]

---

[3] Plaintiff attached the right-to-sue notice to her Response to the motion to dismiss. (ECF No. 5-2). The court may consider the notice because it is "integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *see also Tynes v. Mayor & City Council of Batimore*, No. 22-cv-01452-ELH, 2023 WL

The parties focus their arguments on the equitable tolling rules that govern under federal law. Counts I and II, however, as state law claims are subject to *state*—not federal—statutes of limitations, and "in any case in which a state statute of limitations applies . . . the state's accompanying rule regarding equitable tolling should also apply." *Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999). Thus, Maryland law controls whether equitable tolling applies here.

"The rule in Maryland concerning equitable tolling of statutes of limitations 'can be fairly termed one of strict construction.'" *Shofer v. Hack Co.*, 970 F.2d 1316, 1320 (4th Cir. 1992) (quoting *Walko Corp. v. Burger Chef Sys., Inc.*, 281 Md. 207, 210 (1977)). Pointedly, "where the Legislature has not made an exception in express words in the Statute of Limitations," a court generally cannot toll the limitations period. *Id.* (quoting *Walko Corp.*, 281 Md. at 211).

Applying that rule, the United States Court of Appeals for the Fourth Circuit has previously held that when a plaintiff files state law claims that "aris[e] from the same set of circumstances" as a federal law claim, Maryland law does not permit a court to toll the limitations period for the state law claims while the

---

2664233, at *12 (D.Md. March 28, 2023) (considering EEOC right-to-sue notice in deciding motion to dismiss); *Arsenault v. Dep't of Pub. Safety & Corr. Servs.*, No. 20-cv-0998-RDB, 2020 WL 7694472, at *1 n.2 (D.Md. Dec. 28, 2020) (same).

7

Plaintiff pursues federal administrative remedies. *See McNeal v. Montgomery Cty.*, 307 F.App'x 766, 771–72 (4th Cir. Jan. 20, 2009). Similarly, courts in this district have rejected the argument that delays or "misleading error[s]" by federal administrative agencies can toll Maryland's statute of limitations for related (but separate) state law claims—especially when Plaintiff's ability to file those claims does not "hinge[] on any action taken by the EEOC." *Melendez v. Bd. of Educ. for Montgomery Cty.*, No. 14-cv-3636-DKC, 2015 WL 3540947, at *11 (D.Md. June 3, 2015).[4] Thus, Maryland law does not permit tolling of the limitations period for the claims in Counts I and II based on alleged confusing language in the right-to-sue notice.

A related concept, judicial tolling, bears mention. Although not invoked by Plaintiff, the Chief Judge of the Maryland Supreme Court in 2020 issued an emergency order in response to the COVID-19 pandemic judicially tolling the state statute of limitations from March 16, 2020, to July 20, 2020. *Murphy v. Liberty Mut. Ins. Co.*, 478 Md. 333, 361-62 (2022). Under that judicial tolling order, any time between those two dates "do[es] not count against the time remaining for the initiation of the matter." *Id.* at 362

---

[4] *See also Wimbush v. Kaiser Found. Health Plan of the Mid Atl. States, Inc.*, No. 14-cv-0525-TDC, 2015 WL 2090654, at *8 (D.Md. May 4, 2015) ("[A]ny time Wimbush spent pursuing administrative remedies for her Title VII claims does not toll the statute of limitations for her related but separate claims.").

8

(internal quotation marks omitted).  Thus, the limitations period for Plaintiff's claims began to run not on July 16—the day she was fired—but four days later, on July 20—the day the judicial tolling order expired.  Those extra four days, however, make no difference because Plaintiff filed this suit several months too late.

Finally, even if the limitations period could be tolled based on misleading or confusing agency communications, Plaintiff still would not prevail because the right-to-sue notice in this case was not at all misleading.  Plaintiff points to no inconsistent or inaccurate statements in the document.  Instead, she cites one sentence on the second page of the notice, which states that she has 90 days "to file a lawsuit against the respondent(s) named in the charge of discrimination." (ECF No. 5-2, at 2).  That 90-day timeline applied only to federal law claims like Plaintiff's ADA claim in Count III.  It did not apply to Plaintiff's state and county law claims—rather, those claims were set to expire several weeks from the date she received the notice.  Plaintiff argues that because that particular sentence did not differentiate between federal law claims and state law claims, the notice led her to believe that she had 90 days to file *all* claims related to her discharge. (ECF No. 5, at 4).

The sentence identified by Plaintiff by itself may be unspecific, but the rest of the document clearly dispels any potential ambiguity.  For instance, mere inches above that

9

sentence, the notice provides a prominent disclaimer at the top of the page:

> This information relates to filing suit in Federal or State Court *under Federal law*. If you plan to sue claiming violations of State law, please be aware that the time limits may be shorter and other provisions of State law may be different than those described below.

(ECF No. 5-2, at 2) (emphasis in original). Similarly, on the first page, the notice states that Plaintiff has 90 days to sue Defendant "under federal law." (ECF No. 5-2, at 1). Plaintiff's failure timely to file her state and county law claims was caused not by agency misinformation, but by Plaintiff's own misunderstanding of the statute of limitations. Thus, Counts I and II are time-barred and will be dismissed.

### B.   Count III: ADA Claim

The ADA bars an employer from "discriminat[ing] against a qualified individual on the basis of disability" with regard to certain employment practices, including the "discharge of employees." 42 U.S.C. § 12112(a). Defendant's sole argument for dismissal of Count III is that the Complaint fails to allege facts sufficient to show that Plaintiff is a "qualified individual" under the ADA. (ECF No. 4-1, at 4-6). A "qualified individual" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To decide

whether an employee is "qualified," courts consider the employee's capacity on "the date of [the] adverse employment decision." *EEOC v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 379 (4th Cir. 2000). Thus, to allege sufficiently that she was a "qualified individual" under the ADA, Plaintiff must state facts to show that on the day she was fired—July 16, 2020—a reasonable accommodation would have allowed her to perform her job's essential functions.

Defendant asserts that "by its very nature," Plaintiff's position—code enforcement officer-requires a person to "be[] out in the community noting and citing code infractions." (ECF No. 4-1, at 5). Thus, because the Complaint alleges that Plaintiff could not safely return to in-person work at the time of her firing, Defendant argues that no reasonable accommodation would allow her to perform the essential function of "engaging with the community to locate and identify violations." (ECF No. 4-1, at 5).

Plaintiff responds that Defendant "never engaged in a good faith process to determine . . . [an] accommodation that would allow Plaintiff to work while remaining safely distant from others." (ECF No. 5, at 6). Under the ADA's regulations, "it may be necessary for the [employer] to initiate an informal, interactive process . . . [to] identify . . . potential reasonable accommodations." 29 C.F.R. § 1630.2(o)(3). This interactive process, however, "is not an end in itself," but rather "a means for determining what reasonable accommodations are available."

11

*Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013) (internal quotation marks omitted). An employer who fails to engage in the process does not violate the ADA unless the employee can show that the process would have yielded "a reasonable accommodation that would enable the [employee] to perform the job's essential functions." *Id.* (internal quotation marks omitted). Simply put, regardless of the employer's failure to engage, the employee "cannot escape" the obligation to establish that he or she is "qualified" under the ADA. *Id.*[5]

Thus, Plaintiff must still plead facts sufficient to show that on the date of her discharge, a reasonable accommodation would have allowed her to perform the essential functions of her job. The Complaint contains no such allegations. It does not even state the duties that Plaintiff's role entailed—much less which of those duties were essential. Nor does it identify the kinds of reasonable accommodations that would have allowed Plaintiff to perform those duties.

At most, the Complaint alleges that Plaintiff told her employer that she could work remotely. (ECF No. 1, at 2). If remote work was the reasonable accommodation Plaintiff sought, she

---

[5] *See also Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1231 (10th Cir. 2009) ("[A] disabled plaintiff alleging that an employer failed to properly engage in the interactive process must also establish that the interactive process would have likely produced a reasonable accommodation.")

must still explain how she could have performed the essential functions of her job while working remotely.  Similarly, if Plaintiff believes that some other accommodation would have allowed her to work outside of her home "while remaining safely distant from others"—as she asserts in her Response, (ECF No. 5, at 6)—then the Complaint must likewise explain how such an arrangement would allow her to perform her essential tasks.  Because the Complaint contains none of these details, Plaintiff has failed to state an ADA claim, and Count III will be dismissed.

Plaintiff will, however, be given a chance to file an amended complaint which includes greater factual support for her ADA claim. *See, e.g.*, *Weigel v. Maryland*, 950 F.Supp.2d 811, 825-26 (D.Md. 2013) ("When a plaintiff fails to state a claim, he should generally be given a chance to amend the complaint.") (internal quotation marks omitted).  Although Plaintiff has not sought leave to amend, district courts have discretion to grant it "freely" and "when justice so requires."  Fed.R.Civ.P. 15(a)(2).  The court will exercise that discretion in this case, and Plaintiff will have 28 days to file an amended complaint.

In its proposed order, Defendant requests that the Complaint be dismissed with prejudice, (ECF No. 4-2), which would prevent Plaintiff from filing an amended complaint.  Dismissal with prejudice is proper when "a complaint is incurable through amendment," such that "any amendment would be futile."  *United*

*States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 n.6 (4th Cir. 2017) (internal quotation marks omitted); *see also Weigel*, F.Supp.2d at 826 ("[D]ismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his claim.") (citation omitted).  Defendant seems to argue that Plaintiff could not possibly state an ADA claim because Plaintiff's health condition categorically precluded her from doing certain duties that Defendant claims were essential to her job, such as "engaging with the community," "locat[ing] . . . violations," and "citing code infractions."  (ECF No. 4-1, at 5).  At this stage, however, the court cannot accept as true Defendant's factual assertions about the nature of Plaintiff's job duties.

All told, Plaintiff's ADA claim does not appear to be "incurable." *Manor Care*, 851 F.3d at 305 n.6.  Plaintiff's health condition apparently precluded some degree of close human interaction during the height of the COVID-19 pandemic in 2020.  Plaintiff may be able to file an amended complaint which alleges that her job involved less human interaction than Defendant currently suggests, thus making it more feasible for her to perform essential tasks with a reasonable accommodation.  And even if Defendant's description of Plaintiff's job is accurate, Plaintiff may still be able to state a plausible ADA claim in an amended complaint by identifying a reasonable accommodation that would have allowed her safely to perform her essential tasks.  Either

way, an amendment is not necessarily futile, and Count III will be dismissed without prejudice.[6]

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted.  Counts I and II will be dismissed with prejudice. Count III will be dismissed without prejudice, and Plaintiff will have 28 days to file an amended complaint which includes greater factual support for her ADA claim.

                                                   /s/
                                  DEBORAH K. CHASANOW
                                  United States District Judge

---

[6] Counts I and II, however, will be dismissed with prejudice because no amendment could remedy the fact that the statute of limitations bars those claims.